# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **PAMELA O. SIZEMORE,** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:08cv00035** |
| | ) | |
| **SOUTHWEST VIRGINIA REGIONAL** | ) | **REPORT AND RECOMMENDATIONS** |
| **JAIL AUTHORITY, et al.,** | ) | |
| **Defendants** | ) | **BY: PAMELA MEADE SARGENT** |
| | ) | **UNITED STATES MAGISTRATE JUDGE** |
| | ) | |

This case comes before this court on the motion of the defendant, Southwest Virginia Regional Jail Authority, ("SWVRJA"), for summary judgment, (Docket Item No. 26). Pamela O. Sizemore, ("Sizemore"), the plaintiff, brought this case against defendants SWVRJA, and several individual defendants, individually and in their respective official capacities. In her Complaint, Sizemore seeks recovery under Title VII to the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, for sex discrimination, the Age Discrimination in Employment Act of 1967, ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, for age discrimination, the Fourteenth Amendment for a violation of procedural due process, and wrongful discharge in violation of the Constitution of the Commonwealth of Virginia, Virginia state law and SWVRJA's own regulations and policies. Jurisdiction is conferred upon this court by 28 U.S.C. § 1331. The court previously dismissed Sizemore's sexual harassment claim against the individual defendants, her age discrimination claim against the individual defendants, her procedural due process claim in its entirety and her common law wrongful discharge claim in its entirety. Moreover, Sizemore now concedes that she has no age discrimination claim against the defendant. That being the case, the only claims remaining

Case 1:08-cv-00035-JPJ-PMS   Document 39   Filed 10/13/09   Page 1 of 27   Pageid#: 205

before the court are Sizemore's sex discrimination claims against SWVRJA. The defendant's motion for summary judgment is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

## I. Facts

Since this case is before the court on a motion for summary judgment, the court must look to the evidence proffered by the parties in support of and in opposition to the motion to determine if there are any genuine issues of material fact. Having reviewed the affidavit, deposition transcripts, Equal Employment Opportunity Commission, ("EEOC"), complaint and copy of the Employee Handbook filed with the court, it appears there is not a genuine issue of material fact with regard to Sizemore's hostile work environment claim, but there is a genuine issue of material fact with regard to her disparate treatment claim. The facts recited below have been gleaned from the evidence filed with the court and are undisputed for purposes of this motion unless noted otherwise.

Sizemore was employed as a full-time detention officer assigned to the female inmate housing unit for SWVRJA's Abingdon facility, effective April 9, 2005. At her deposition, Sizemore testified that Lieutenant Terry Powers would say "ugly" things to her in front of other officers, beginning from the time Powers was promoted to sergeant, before becoming a lieutenant, but she could not remember the date that this promotion to sergeant occurred. (Attachment 1 to Docket Item No. 34, ("Sizemore Depo."), 89-90.) In particular, Sizemore testified that Powers would tell her that her breasts were too small, her buttocks was too small and that she was too skinny. (Sizemore Depo. at 90.) She stated

-2-

that "[e]verything had to be a sexual remark with him." (Sizemore Depo. at 90.) Sizemore testified that most of these remarks would occur "outside when we would be getting ready to exchange shifts." (Sizemore Depo. at 91.) She further testified that Powers would describe how he would like to have sex or what sexual positions he preferred. (Sizemore Depo. at 91.) Sizemore stated that these comments were made in front of all the other officers who were working her shift, including Nancy McCoy, Ikey Thomas, Sam Campbell and Todd Tatum. (Sizemore Depo. at 92.) Specifically, Sizemore testified that Powers would state generally how he liked to have sex, but then he would say "but not with you, Sizemore." (Sizemore Depo. at 91.) Sizemore testified that Powers singled her out to intimidate her or make her feel out of place. (Sizemore Depo. at 91.) She further testified that Powers would make these sorts of comments "[a]lmost every morning we worked." (Sizemore Depo. at 92.) More specifically, Sizemore testified that Powers stated that he liked to receive "blow jobs" and that he would state that was the only way some women could turn him on and that she was one of them. (Sizemore Depo. at 97.) She stated that Powers asked her "if [she] did those kind of things," to which she responded that he needed to grow up and leave her alone. (Sizemore Depo. at 98.) Sizemore testified that when she told Powers that if he did not stop talking to her that way, she would report him, he informed her that it would not do any good. (Sizemore Depo. at 98.) She testified that she tried not to return any comments to Powers, except that, on occasion, she would ask him not to talk to her in such a manner or not to do so in front of other people. (Sizemore Depo. at 92.)

    Sizemore testified that sometime in 2006, after Powers was promoted to lieutenant, he told her that if she could "give him a blow job that would make his toes curl," she could

have a counselor's position because he was "in tight with Matt Pilkenton."[1]  (Sizemore Depo. at 99.)  Sizemore stated that Nancy McCoy, Sam Campbell and Ikey Thomas were present when Powers made this comment.  (Sizemore Depo. at 100.)  She also stated that Powers commented to her that he liked to "screw doggy style," and he told her things he could do to her that would turn her on.  (Sizemore Depo. at 99.)  However, she testified that Powers told her that he would not "screw [her] facing [her] because he didn't like to look at [her]."  (Sizemore Depo. at 99.)  She stated that these comments were made "out front" when she and her co-workers were waiting to go in for shift change.  (Sizemore Depo. at 99.)  She also stated that a lot of the comments were made in the female housing unit. (Sizemore Depo. at 99.)  Finally, Sizemore stated that on January 8, 2007, the day she was fired, Powers told her that he would like to watch her have sex with a female inmate and that he would like to watch inmates having sex with each other.  (Sizemore Depo. at 100.)

Sizemore testified that when she asked Powers not to speak to her in such a manner, he would respond to her "well, you do know, Sizemore, that there's too many women here and that we'll be getting rid of them."  (Sizemore Depo. at 109.)  She stated that this comment was made at the front of the building, as well as in the female housing unit, in the presence of other co-workers.  (Sizemore Depo. at 109.)

Sizemore testified that she informed the Captain, Dwayne Lockhart, as well as Major Matthew Pilkenton, about these comments on several different occasions, although she could not recall exact dates.  (Sizemore Depo. at 93, 101.)  However, she stated that she never made any written complaints about Powers's behavior because she was unaware, at

_____

[1]There is evidence in the record that Sizemore had applied for a counselor's position at the Abingdon facility.

that time, that a procedure for complaining about such behavior existed. (Sizemore Depo. at 93.) In particular, she testified that Steve Clear told her that she had no grievance procedure. (Sizemore Depo. at 93.) Later during her deposition, she stated that she never made any written complaints because "no one wanted to take any written complaints." (Sizemore Depo. at 101.) Instead, she testified that she complained verbally to both Captain Lockhart and Major Pilkenton, but the only thing that she was told was that they would have to talk to Powers. (Sizemore Depo. at 101.) Specifically, Sizemore testified that she recalled four different occasions that she complained of Powers's behavior to both Lockhart and Pilkenton. (Sizemore Depo. at 101.)

Sizemore testified that Major Pilkenton also made comments that there were too many females at the jail and that he was going to "weed them out." (Sizemore Depo. at 109.) She testified that Tim Evans, Director of Programs, made comments of a similar nature as well. (Sizemore Depo. at 132.)

Sizemore testified that on the day she was fired, she was called into Major Pilkenton's office, where he told her to sign a paper resigning from her position and to give him her duty belt and radio. (Sizemore Depo. at 168.) When she asked him why, he responded that he did not have to give her an answer and he did not have the time to do so. (Sizemore Depo. at 168-69.) She stated that she told Pilkenton that she had no respect for him because he could not answer her question and that she was not going to sign the paper. (Sizemore Depo. at 169.) At that point, Pilkenton informed her that failure to sign it would result in an inability to receive unemployment. (Sizemore Depo. at 169.) She again refused to sign. (Sizemore Depo. at 169.) Pilkenton told her that she was terminated and to leave his office. (Sizemore Depo. at 169.) Sizemore testified that she returned to the

female housing unit to retrieve her belongings so that she could leave. (Sizemore Depo. at 169.) She was escorted out of the facility by Lockhart and Powers in front of the incoming shift. (Sizemore Depo. at 169.) Sizemore testified that she had not been made aware at that time that she had been accused of making a racist statement directed at one of her supervisors,[2] and only learned of such accusations when she retrieved her personnel file later that month. (Sizemore Depo. at 169.) Sizemore denies ever having made a remark about the color of another officer's skin. (Sizemore Depo. at 176.)

Sizemore testified that two males began work at SWVRJA the same day that she was fired. (Sizemore Depo. at 175.) However, she stated that she did not know whether they were assigned to the female housing unit, and she did not know whether they were hired prior to the day she was fired. (Sizemore Depo. at 175.) Sizemore further testified that female officers worked the female housing unit while she was there. (Sizemore Depo. at 175.) She also testified that a younger female employee, who had worked at the Abingdon facility for a few days as a relief officer, also had been called in that day. (Sizemore Depo. at 176.) However, Sizemore testified that she did not know whether this female employee remained as a relief worker or whether she was hired as a permanent employee. (Sizemore Depo. at 176.)

SWVRJA has offered evidence, by way of an affidavit of H. Lee Noble, the Superintendent of SWVRJA. In his affidavit, Noble testified that Sizemore, an employee at will, was terminated by Pilkenton due to an accumulation of individual actions, including

---

[2]Three inmates filed statements on the day that Sizemore was terminated, stating that they heard Sizemore make a racist comment regarding an African American supervisor. Specifically, these inmates stated that Sizemore commented that this supervisor's skin was so black that he could not be seen unless he smiled.

-6-

a racial slur regarding an African American supervisor, negative interactions with both inmates and co-workers and her negative demeanor and attitude toward SWVRJA as a whole. (Exhibit A, Part 1, to Docket Item No. 27, ("Noble Affidavit"), 1.) He further noted that Sizemore's personnel file reflected counseling or reprimands for: (1) tardiness on three occasions; (2) failure to properly count the inmates under her charge; (3) failure to follow instructions; and (4) unprofessional behavior in failing to get along with staff. (Noble Affidavit at 1-2.) Noble further testified that Sizemore had received an unfavorable performance review by her supervisor on December 7, 2005. (Noble Affidavit at 2.) Noble stated that the inmate allegations in January 2007, combined with a previous record that did not meet the legitimate expectations of SWVRJA, led Pilkenton, with Noble's approval, to terminate Sizemore. (Noble Affidavit at 2.)

Noble testified that Sizemore's position was filled primarily by two other female officers who previously were employed by SWVRJA, and who remain employed there in the positions of day shift security officers assigned to the female housing unit. (Noble Affidavit at 2.) One of these females, Vicki Atwell, is more than 40 years of age, while the other, Mary Socarras, is more than 50 years of age. (Noble Affidavit at 2.) Noble testified that other female guards often assist at that position from time to time, but that Atwell and Socarras are the two guards who hold the position formerly occupied by Sizemore and have done so since January 8, 2007. (Noble Affidavit at 2.) Noble testified that the security guard positions for the female housing unit are always filled by female employees as a matter of SWVRJA practice. (Noble Affidavit at 2.) Therefore, he testified that any person who would potentially have replaced Sizemore in her position as a guard in the female housing unit would necessarily have been female. (Noble Affidavit at 2.)

Noble testified that SWVRJA "strongly discourages" harassment of any kind and has a "well-written, easily understood anti-harassment policy," which is contained in the Employee Handbook, of which Sizemore had acknowledged receipt. (Noble Affidavit at 2-3.) He further stated that to prevent harassment and to ensure that all employees are treated professionally and with dignity, all supervisors and employees are trained not to harass or tolerate harassment and to report harassment. (Noble Affidavit at 3.) Noble testified that supervisors and employees are instructed to submit a written complaint to the Human Resources Manager, the Jail Administrator and the Superintendent. (Noble Affidavit at 3.) He stated that, in his capacity as Superintendent, he has custody and control over complaints with regard to harassment and discrimination, and a review of those records showed that Sizemore filed no such complaints regarding sexual harassment, nor had he received any reports of any such harassment. (Noble Affidavit at 3.)

## II. Analysis

The defendant, SWVRJA, argues that summary judgment should be granted in its favor on multiple grounds. First, SWVRJA argues that Sizemore cannot make out a prima facie case of hostile work environment because she cannot show that the alleged sexual harassment was sufficiently pervasive or severe to create an objectively hostile work environment, nor can she show that the alleged sexually harassing comments interfered with her work performance. Moreover, SWVRJA argues that it is protected from liability for Sizemore's hostile work environment claims because it exercised reasonable care to prevent and correct promptly any sexually harassing behavior and because Sizemore unreasonably failed to take advantage of any preventive or corrective opportunities provided by SWVRJA or to avoid the harm otherwise.

-8-

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); s*ee Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995); *Miltier v. Beorn*, 896 F.2d 848, 850 (4th Cir. 1990); *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364-65 (4th Cir. 1985); *Cole v. Cole*, 633 F.2d 1083, 1090 n.7 (4th Cir. 1980). The plaintiff is entitled to have the credibility of all her evidence presumed. *See Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The opposing party must demonstrate that a triable issue of fact exists; she may not rest upon mere allegations or denials. *See Anderson*, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. *See Anderson*, 477 U.S. at 248.

A. *Sexual Discrimination*

There are two types of sexual harassment claims. These two types are hostile work

environment and quid pro quo discrimination claims. *See Spencer v. Gen. Elec. Co.,* 894 F.2d 651, 658 (4th Cir. 1990). In this suit, Sizemore first claims that she was the victim of a hostile work environment as a result of the behavior of Terry Powers, Matthew Pilkenton and Tim Evans, supervisors at SWVRJA, toward her.

### 1. Hostile Work Environment

In SWVRJA's Memorandum In Support Of Defendant's Second Motion For Summary Judgment, ("SWVRJA's Brief"), (Docket Item No. 27), SWVRJA argues that Sizemore has (1) failed to produce evidence of unwelcome sexual harassment, which was severe or pervasive enough to create an abusive or hostile work environment and has (2) failed to show that the alleged sexually harassing comments interfered with her work performance. Thus, SWVRJA argues that Sizemore has failed to state a prima facie Title VII sexual harassment case.

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of ... race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1) (West 2003). The United States Supreme Court has said that Title VII is violated when an employee suffers sexual harassment that is "sufficiently severe or pervasive 'to alter the conditions of . . . employment and create an abusive working environment.'" *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). The prima facie case that the plaintiff must prove when bringing a hostile work environment claim is established if the plaintiff can prove:

-10-

(1) unwelcome conduct; (2) that is based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.

*Anderson v. G.D.C., Inc.,* 281 F.3d 452, 458 (4th Cir. 2002) (quoting *Conner v. Schrader-Bridgeport Int'l, Inc.,* 227 F.3d 179, 192 (4th Cir. 2000)).

Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22 (1993); *see also Lissau v. So. Food Serv., Inc.*, 159 F.3d 177, 183 (4th Cir. 1998). Thus, there is both an objective, as well as a subjective, component to making a prima facie hostile work environment claim. The Supreme Court held in *Harris* that while "Title VII bars conduct that would seriously affect a reasonable person's psychological well-being, . . . the statute is not limited to such conduct." 510 U.S. at 22. Thus, in *Harris*, the Supreme Court held that a plaintiff need not show that the alleged conduct "seriously affect[ed] [her] psychological well-being" or led her to "suffe[r] injury," noting that "[s]uch an inquiry may needlessly focus the factfinder's attention on concrete psychological harm, an element Title VII does not require." 510 U.S. at 22. The proper inquiry is as follows: "[s]o long as the environment would reasonably be perceived, and is perceived, as hostile or abusive . . . there is no need for it also to be psychologically injurious." *Harris*, 510 U.S. at 22. In 2000, the Fourth Circuit, pursuant to *Harris*, included a fifth element to be considered in determining whether alleged conduct is subjectively perceived as severe and pervasive, whether psychological harm resulted

-11-

therefrom. *See Conner*, 227 F.3d at 193, 199. Of course, the court must be mindful of the Supreme Court's finding in *Harris* that the psychological impact need not be "serious." *See* 510 U.S. at 22. Nonetheless, under the relevant case law, it appears that the plaintiff must make some showing of a psychological impact resulting from the offending conduct as evidence that he or she perceived the atmosphere as hostile or abusive. However, I further note that "while psychological harm, like any other relevant factor, may be taken into account, no single factor is required." *Harris*, 510 U.S. at 23.

> . . . [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Harris,* 510 U.S. at 23. The United States Supreme Court made clear in *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotations and citations omitted), that "[s]imple teasing, off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."

SWVRJA does not argue that Sizemore has failed to produce evidence that her supervisors' conduct was unwelcome, that it was based on her sex or that it is imputable to it. Instead, the defendant argues that Sizemore's evidence is insufficient as a matter of law to prove that the alleged harassment was severe or pervasive and that it interfered with her work performance. For the following reasons, I find that Sizemore has not demonstrated a prima facie hostile work environment claim. As stated above, in order to determine whether a work environment is hostile or abusive, the court may look to the following factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3)

-12-

whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *See Harris*, 510 U.S. at 23. Again, whether an environment is hostile or abusive requires a showing that a reasonable person would find it to be so – the objective component – and that the plaintiff found it to be so – the subjective component. While I find that Sizemore has met her burden of production with respect to the objective component, she has failed to make the requisite subjective showing.

Sizemore has testified that various sexually inappropriate comments, as set forth above with specificity, were made to her on *numerous* occasions. At one point in her deposition, she testified that such comments were made by Powers "[a]lmost every morning we worked." Further, she claims that multiple co-workers were present when Powers made these comments. SWVRJA has offered no evidence to rebut this testimony, instead seizing only upon the very specific statements to which she testified to argue that the comments were isolated at best. However, viewing the facts in the light most favorable to Sizemore, as this court must, I find that Sizemore's testimony that such sexually inappropriate comments were made to her by Powers "[a]lmost every morning [they] worked," demonstrates that the comments were made with some degree of frequency and cannot be viewed as isolated in nature.

Next, as for the severity of the comments, I find that they were sufficiently severe to be considered more than simple teasing or off-hand comments. For instance, I find particularly egregious Powers's comments regarding having to engage in sex with Sizemore "doggy style" because he could not look at her face. Also particularly egregious is Powers's comment to Sizemore that if she "g[a]ve him a blow job that would make his

-13-

toes curl," he could get her the counselor's position that she had applied for. These particularly egregious comments were allegedly combined with other comments that were arguably less severe in nature, but which were made almost every morning that Sizemore and Powers worked together. For all of these reasons, I find that the alleged sexually harassing comments were severe. Next, while SWVRJA correctly notes that the alleged comments were not per se physically *threatening*, they were undoubtedly physically *humiliating*. For instance, Sizemore testified that Powers stated that her breasts and buttocks were too small, she was too skinny and he would have to engage in sex with her "doggy style" because he could not look at her face. Moreover, Sizemore testified to instances during which Powers would discuss how he preferred to have sex, but then, in front of her co-workers, would add "but not with you, Sizemore." Finally, SWVRJA contends that the alleged sexual harassment did not unreasonably interfere with Sizemore's work performance. I note that this factor is not as clear cut in this case as the other factors. However, I find that there is evidence before the court from which a reasonable jury could find that Sizemore's work performance was unreasonably interfered with by the alleged sexual harassment. In particular, the court notes that the defendants themselves argue that Sizemore's work performance has been lacking, in that she has been counseled and/or reprimanded for various infractions, that three inmates filed statements regarding an alleged racist comment that Sizemore made the day she was fired and that she received an unfavorable performance evaluation in December 2005, eight months after being hired by SWVRJA. There is no way for the court to know whether Sizemore's work performance would have been better had her supervisor not been making these allegedly sexually harassing comments to her "almost every day [they] worked." Nonetheless, the court also cannot know otherwise – that her work performance was not unreasonably interfered with by the alleged sexual harassment. Particularly, the court notes that one of the problems

-14-

indicated by Noble in his affidavit was Sizemore's negative attitude and demeanor toward SWVRJA as a whole. For the sake of argument, the court observes that such negative attitude and demeanor could have been a direct result of the sexually harassing comments Sizemore alleges that she was subjected to at SWVRJA.

In any event, even assuming that SWVRJA is correct that Sizemore's work performance was not affected by the alleged conduct, I emphasize that this is only one factor to be considered in determining whether a work environment is abusive or hostile. Considering that Sizemore has presented sufficient evidence demonstrating the other factors, the court finds that an inability to meet this fourth factor would not be fatal to her hostile work environment claim. It is for all of these reasons that I am of the opinion that Sizemore can show that a reasonable person would find her work environment to be abusive or hostile. However, for the reasons that follow, she fails to make the requisite showing that she personally found the environment to be so.

The plaintiff carries the burden of production in making a prima facie case. However, Sizemore simply has not offered any evidence of any psychological effect that the allegedly sexually harassing comments had on her. For instance, she has not alleged that she attempted to avoid the offending individuals or altered her normal work routine in any fashion, that she experienced any physical symptoms due to psychological stress such as headaches, nausea or crying or that her work performance suffered as a result of the offending behavior. In short, Sizemore has failed to allege any facts from which this court can infer the psychological impact, if any, that the allegedly sexually harassing comments had on her personally, to show that she subjectively perceived her work environment to be hostile or abusive. The court notes that, while plaintiff's counsel at oral

-15-

argument asserted that he had not had sufficient time to conduct discovery on this issue, counsel has not filed a Rule 56(f)[3] affidavit with the court stating any reason that he "cannot present facts essential to justify its opposition" on this point, and the court would not be inclined to entertain such an affidavit at this late stage in the plaintiff's case. Furthermore, if Sizemore had found the conduct to be subjectively hostile or abusive, she could have met her burden of production by simply filing an affidavit alleging so. She has not done so. That being said, I cannot find that Sizemore has met her burden of demonstrating the existence of a prima facie case for hostile work environment because she cannot show that she perceived the conduct to be sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. Based on all of the above-stated reasons, I recommend that the court grant summary judgment in the defendant's favor on Sizemore's hostile work environment claim. However, should the court disagree with this analysis, it must also consider the defendant's argument that it is entitled to an affirmative defense against liability for hostile work environment under the cases of *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher*, 524 U.S. 775.

In *Ellerth* and *Faragher*, decided on the same day, the Supreme Court held that an employer is subject to vicarious liability for an actionable hostile environment created by a supervisor with immediate or successively higher authority over an employee. However,

---

[3]Federal Rule of Civil Procedure 56(f) states, in relevant part, as follows: "If a party opposing the [summary judgment] motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken. . . ." FED. R. CIV. P. 56(f)(2).

the Court further found that when the employee has suffered no tangible job consequences[4] as a result of the supervisor's actions, the employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence and comprising two necessary elements: (1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (2) that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid the harm otherwise. *See Ellerth*, 524 U.S. at 765; *see also Faragher*, 524 U.S. at 807. The Court further held that the demonstration that an employee failed to use a complaint procedure provided by the employer in response to sexual harassment by a supervisor normally will suffice to satisfy the employer's burden of demonstrating a lack of reasonable care by the employee to avoid harm, as an element of the affirmative defense to a vicarious liability claim under Title VII. *See Ellerth*, 524 U.S. at 765; *see also Faragher*, 524 U.S. at 807-08. However, the Court was clear that under Title VII, no affirmative defense is available to an employer on an employee's claim of vicarious liability for an actionable hostile environment created by a supervisor when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion or an undesirable reassignment. *See Ellerth*, 524 U.S. at 765; *see also Faragher*, 524 U.S. at 808.

Here, because Sizemore was terminated from her position as a detention officer at SWVRJA's Abingdon facility, she undoubtedly suffered a tangible employment action. The question becomes whether this tangible employment action was a result of the supervisors' alleged improper actions. For the following reasons, I find that there is a

_____

[4]In *Ellerth*, the Supreme Court defined a "tangible employment action" to include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." 524 U.S. at 761.

genuine issue of material fact as to this issue, thereby precluding SWVRJA's use of the *Ellerth/Faragher* affirmative defense as a ground for the granting of summary judgment in its favor. While the majority of the conduct of which Sizemore complains was inflicted by Powers, she also alleges that Major Matthew Pilkenton, who actually terminated her, also made sexually discriminatory remarks, including that there were too many females working at the Abingdon facility and that he intended to weed them out. Also, although dismissed by this court as discussed previously, Sizemore alleged in her Complaint that she was discharged as a result of her complaints of sexually discriminatory treatment at SWVRJA. I find that a reasonable jury could find that Sizemore's termination was a result of her supervisors' combined alleged sexual harassment. That being the case, I find that, at least for purposes of the summary judgment motion before the court at this time, the *Ellerth/Faragher* affirmative defense would not be available to SWVRJA. I further note that as the evidence is further developed in this case, it might be that it becomes clear that Sizemore suffered no tangible employment action *as a result of the supervisors' alleged actions*. Should that be the case, then SWVRJA might raise the *Ellerth/Faragher* affirmative defense at that time. However, at this time, I find that application of this affirmative defense simply is not appropriate. Therefore, I will not entertain an analysis of whether Sizemore's failure to utilize SWVRJA's written policy and procedure for complaining of such sexual harassment was reasonable or not.

## 2. *Disparate Treatment*

Sizemore also argues that she was a victim of disparate treatment by SWVRJA in that, in disciplinary matters, male employees were more likely to be transferred or demoted for conduct for which female employees would be more harshly disciplined or fired.

Case 1:08-cv-00035-JPJ-PMS   Document 39   Filed 10/13/09   Page 18 of 27   Pageid#: 222

SWVRJA argues that Sizemore cannot, as a matter of law, demonstrate a prima facie case of disparate treatment. When a plaintiff in a Title VII case has only indirect evidence of discrimination, then the burden shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), applies. Under *McDonnell Douglas*, a plaintiff in a Title VII case relying on indirect evidence establishes a prima facie case of discrimination by showing the following: (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside of the protected class. *See Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc). Under the *McDonnell Douglas* framework, if a plaintiff makes a prima facie case of discrimination, then the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employer's action. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If a defendant does so, then the plaintiff must demonstrate that the proffered reason was not the true reason for the employment decision. *See Burdine*, 450 U.S. at 256.

In this case, however, Sizemore has presented direct evidence of discrimination. Thus, the *McDonnell Douglas* burden shifting scheme is inapplicable. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985)). "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact . . . without any inference or presumption." *O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 548 (4th Cir. 1995) (quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993)). I find that Sizemore has presented direct evidence of discrimination. In particular, Sizemore has offered evidence

-19-

that Major Matthew Pilkenton made comments that there were too many females working at the jail and that he was going to weed them out. She further testified that Pilkenton was the individual who actually terminated her on January 8, 2007. I find that this evidence, if found to be credible by a jury, would be sufficient to prove that the decision to fire Sizemore was based on a discriminatory reason. That being the case, I find that a reasonable jury could return a verdict for Sizemore on her disparate treatment claim, and I recommend that the court deny the defendant's summary judgment motion on this claim.

Should the court disagree with my finding that Sizemore's disparate treatment claim should proceed due to a showing of discrimination based on direct evidence, I find for the following reasons, that employing the *McDonnell Douglas* burden shifting scheme would result in a different outcome. SWVRJA does not dispute that Sizemore was a member of a protected class nor that she suffered an adverse employment action. Instead, it argues that she was not performing her job duties at a level that met SWVRJA's legitimate expectations at the time she was terminated from her position with the Abingdon facility. Moreover, SWVRJA argues that Sizemore cannot show either that the position remained open or was filled by a similarly qualified applicant outside of the protected class. I agree with SWVRJA that Sizemore cannot make a prima facie showing of discrimination under the *McDonnell Douglas* framework.

First, there is evidence before the court that Sizemore was not meeting the legitimate expectations of SWVRJA at the time of her discharge in January 2007. For instance, the defendant has supplied evidence that she had received a negative performance evaluation, she had been reprimanded twice in writing for being late for work on three separate occasions and that she also had been reprimanded in writing for not properly counting the

-20-

inmates. Additionally, the defendant has submitted the affidavit of H. Lee Noble, Superintendent of SWVRJA, in which Noble testified that Major Matthew Pilkenton terminated Sizemore's employment, with his approval, due to an accumulation of individual actions, including, but not limited to, making a racial slur about an African American supervisor, negative interactions with both inmates and co-workers and her negative demeanor and attitude toward the jail authority as a whole. Noble also stated in his affidavit that Sizemore's personnel record showed that she had been counseled or reprimanded for tardiness on three occasions, for failure to properly count the inmates under her charge, for failure to follow instructions and for unprofessional behavior in failing to get along with staff. He further noted the unfavorable work performance evaluation from December 7, 2005, as well as three inmate statements submitted to the defendant on the date of Sizemore's termination in which the inmates complained of the racial slur she made regarding the African American supervisor noted above.

Given all of this evidence, the court finds that a reasonable jury could not find that Sizemore was meeting the legitimate job expectations of SWVRJA at the time of her termination on January 8, 2007. Additionally, for the reasons that follow, I further find that she cannot meet the fourth element necessary to make a prima facie showing of discrimination, namely that the position remained open or was filled by a similarly qualified applicant outside of the protected class. In particular, Sizemore testified at her deposition that, although two young males began working at the Abingdon facility the same day that she was fired, she did not know for what positions they were hired. Furthermore, she stated that she did not know whether they were hired at an earlier date or on the day of her termination. Moreover, Sizemore testified that SWVRJA's policy while she was employed there was to hire only female guards to oversee the female housing unit.

Finally, Noble testified in his affidavit that it is, in fact, SWVRJA's policy to fill such positions with female guards and that, in fact, Sizemore's position was filled by female employees. Thus, given this evidence, I find that a reasonable jury could not find that Sizemore's position remained open or was filled by a similarly qualified applicant outside of the protected class.

However, even assuming, arguendo, that Sizemore could make the requisite prima facie showing of discrimination, I find that the defendant has proffered sufficient evidence to demonstrate that it had a legitimate, nondiscriminatory reason for Sizemore's termination. As cited above, Noble testified that Sizemore's termination was the culmination of a series of incidents, including counseling or reprimands for tardiness on three occasions, failure to properly count the inmates under her charge, failure to follow instructions and for unprofessional behavior in failing to get along with staff. Additionally, Noble stated that on the day of her termination, three inmate statements had been submitted complaining that Sizemore had made a racial slur regarding an African American supervisor. Sizemore has not supplied any evidence to show that this proffered nondiscriminatory reason for her termination is mere pretext. Thus, should the court disagree with my finding regarding direct evidence of discrimination, I find that sufficient evidence exists to find that Sizemore has failed to make the requisite prima facie showing under the *McDonnell Douglas* framework, thereby entitling the defendant to summary judgment on Sizemore's disparate treatment claim.

B. *Age Discrimination*

The defendant also is seeking summary judgment on Sizemore's age discrimination

-22-

claim, arguing that she cannot make the requisite prima facie showing. However, at the September 23, 2009, hearing on the defendant's motion for summary judgment, the plaintiff conceded that she cannot make a prima facie case for age discrimination. Thus, the court finds it unnecessary to discuss this claim any further, and I recommend that this claim be dismissed from the plaintiff's case.

### C. Use of Conduct Occurring Greater Than 300 Days Prior to Filing of EEOC Complaint

Finally, the court notes that the defendant, relying on *Edelman v. Lynchburg College*, 300 F.3d 400, 404 (4th Cir. 2002), argues that Sizemore should not be allowed to bolster her sexual harassment claim with evidence of conduct occurring more than 300 days prior to the filing of her complaint with the EEOC. However, if the court accepts my recommendation to grant summary judgment in the defendant's favor on Sizemore's hostile work environment claim, this argument is now moot. On the other hand, if the court rejects my recommended disposition regarding Sizemore's hostile work environment claim, I am not persuaded by the defendant's argument for the following reasons. SWVRJA argues that, in Virginia, a plaintiff must file a charge with the EEOC within 300 days of the alleged violation. *See Edelman*, 300 F.3d at 404. The court does not disagree that a failure to file a verified charge with the EEOC within 300 days of the last date of the alleged discrimination will bar a plaintiff's Title VII claims. However, I find it a stretch to further hold that no actions outside of this 300-day period may be used to support a plaintiff's Title VII claims. In *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 293 (4th Cir. 2004) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)), also relied on by SWVRJA, the Fourth Circuit explicitly held that "a Title VII plaintiff seeking to recover for a hostile work environment can recover for acts occurring even beyond [the 300-day]

-23-

period, as long as at least a portion of the hostile work environment occurred within the relevant limitations period." Here, Sizemore filed her complaint with the EEOC on June 20, 2007. Thus, as SWVRJA argues, the 300-day period would reach back to August 25, 2006. Clearly, some of the conduct complained of by Sizemore occurred during this 300-day period because she was not terminated until January 8, 2007. Moreover, according to Sizemore's deposition testimony, the alleged sexually harassing conduct by Powers began some time in 2006 when Powers became a sergeant and began working the same shift as Sizemore.[5] Sizemore could not provide an exact date as to when Powers was promoted to sergeant. Because it was some time in 2006, it is possible that it occurred prior to August 25, 2006. However, even assuming, arguendo, that the allegedly sexually harassing behavior began prior to the 300-day period, I find that Sizemore is not precluded from recovering under Title VII for acts that occurred prior to this 300-day period under the Fourth Circuit's ruling in *White*. The defendant concedes that this is the case, emphasizing that it is seeking summary judgment only to the extent that Sizemore wishes to recover for acts occurring outside this 300-day period as discrete acts. Nonetheless, the court notes that it does not read Sizemore's Complaint as seeking recovery for any of the alleged conduct as discrete acts, but under a theory of hostile work environment only.

### PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.  The plaintiff was terminated from her position as a detention officer at SWVRJA on January 8, 2007;

---

[5]There is no evidence before the court as to when the alleged discriminatory comments by Pilkenton and Evans were made.

2. In order to demonstrate a prima facie case for hostile work environment, a plaintiff must show: (1) unwelcome conduct; (2) based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer;

3. The "severe or pervasive element" contains both an objective and a subjective component;

4. To determine whether a work environment is hostile or abusive, the court may look to the following factors: (1) frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether psychological harm resulted therefrom;

5. A reasonable person could find that the conduct alleged by Sizemore was frequent, severe, physically humiliating and, arguably, interfered with her work performance;

6. Thus, Sizemore meets the objective component of the "severe and pervasive element;"

7. Sizemore has failed to allege any impact that the offending behavior had on her personally; thus, she cannot meet the subjective component of the "severe and pervasive element;"

8. Therefore, a reasonable jury could not find that Sizemore can demonstrate a prima facie showing for a hostile work environment claim;

9. Thus, the defendant is entitled to summary judgment on Sizemore's hostile work environment claim;

10. A Title VII plaintiff may carry her burden of proving that an employment decision was based on a discriminatory reason either by direct evidence or by meeting the requirements of the *McDonnell Douglas* burden shifting framework;

-25-

11. Sizemore has presented direct evidence that the decision to terminate her was based on her gender because she has proffered evidence that Major Matthew Pilkenton, the very individual who terminated her, made comments that there were too many females working at the jail and that he was going to weed them out;

12. Therefore, the defendant is not entitled to summary judgment on Sizemore's disparate treatment claim;

13. The plaintiff has conceded that she cannot make a prima facie showing of age discrimination; and

14. Therefore, the plaintiff's age discriminati claim should be dismissed from the plaintiff's case.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court grant in part and deny in part the Defendant's Motion For Summary Judgment, (Docket Item No. 26). In particular, I recommend that the court grant summary judgment in the defendant's favor on Sizemore's hostile work environment claim, deny summary judgment on her disparate treatment claim and dismiss her age discrimination claim.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(c):

Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as

-26-

provided by rules of court.  A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 10 days could waive appellate review.  At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record.

DATED: This 13th day of October 2009.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-27-